ROGERS et al. v. HARRIS. (No. 1345.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 18, 1914. Rehearing Denied Dec. 3, 1914.)

1. GUARDIAN AND WARD (§ 44*)—AUTHORITY TO LEASE.

Rev. St. 1911, arts. 4124, 4136, authorize a guardian to manage and control the ward's property, and to lease the same and collect the rent, but require him to account for reasonable rent when he is not ordered to lease. Articles 4137 and 4139 authorize the court to order a lease for not exceeding one year, and on complaint require the guardian to show cause why he should not be required to rent, and to make an order in such case. *Held*, that a guardian, renting without an order, was not limited to a lease for a year, but had power to lease for a longer term.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 192–201; Dec. Dig. § 44.*]

2. GUARDIAN AND WARD (§ 44*)—AUTHORITY TO LEASE.

A guardian at common law can lease a ward's real estate for any term of years not extending beyond minority.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 192–201; Dec. Dig. § 44.*]

3. LANDLORD AND TENANT (§ 76*) — ACTION FOR RENT—EVIDENCE.

Evidence in action by a guardian for rent *held* to justify a finding that no agreement was made permitting defendants to sublet.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 225–230; Dec. Dig. § 76.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**4. APPEAL AND ERROR (§ 1074\*)—HARMLESS ERROR.**

Where there is a full statement of facts, and no issue raised which cannot be satisfactorily disposed of without conclusions requested, and no objection is raised on appeal to the consideration of findings of fact and conclusions of law certified in the record, error, if any, in failing to file findings of fact and conclusions of law within the time prescribed by statute, is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4248–4252; Dec. Dig. § 1074.\*]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Suit by Mae Harris against Webb Rogers and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Young & Abney, of Marshall, for appellants. Beard & Davidson, of Marshall, for appellee.

HODGES, J. Mrs. Mae Harris, for herself and as guardian for her minor son, James S. Harris, instituted this suit in the court below against the appellants to recover the sum of $1,000 alleged to be due for the rent of certain store buildings in the city of Marshall, Tex. The facts show that Mrs. Harris is the guardian of the person and estate of James S. Harris, a minor alleged to be 10 years of age; that the minor owns, subject to Mrs. Harris' one-third life interest, some lots in the city of Marshall, on which are two brick storehouses, which, prior to July 21, 1913, had been leased to the appellants for a term of three years, beginning January 1, 1912, for $75 per month. In the rear of those two buildings is a space which at that time was covered by some other buildings of an unsubstantial nature. On July 21, 1913, the appellants wrote the following letter to Mrs. Harris:

"July 21, 1913.

"Mrs. J. W. Harris—Dear Madam: If you will erect a one-story brick building in the rear of the building occupied by us, between them and Simpson's barber shop, same to cover all space, and to have two front doors, with partition in center, with two doors, with awning in front, we will take same, together with the buildings we now have, at a lease price of $100 per month from date of completion, for three years, with privilege of renewal for three years at the same price. We agree upon completion of same to pay $1,000, ten months' rental, in advance, with guaranty from you in case the building should be destroyed, or partially destroyed, that all rental paid in advance you will refund same immediately.

"Yours truly,

"Rogers Brothers,
"By W. P. Rogers, Jr."

This offer was accepted by Mrs. Harris, and the construction of the buildings contemplated commenced. A short time before their completion, about the last of September of that year, permission was given to the appellants to move some of their goods into the new buildings, and they have retained possession since that time. Just before the

buildings were completed, however, T. W. Davidson, the attorney who represented Mrs. Harris in her business transactions, had an interview with appellants with reference to subletting the premises. Appellants testified that Davidson agreed that, if they would release Mrs. Harris from her obligation to construct an awning in front of the buildings, she would allow them to sublet. According to the testimony of Davidson, he made no such absolute agreement, but told them that, if they would yield the provision of the contract requiring the construction of the awning, he would submit the matter to Mrs. Harris and advise her to give permission for subletting the premises. It developed, however, that Mrs. Harris declined to accede to such terms, and the awning was thereafter constructed. About October 1, 1913, after the buildings were completed, Mrs. Harris demanded payment of the $1,000, which the appellants had agreed to pay in advance. This was refused, unless Mrs. Harris would execute a lease giving to the appellants the privilege of subletting. She declined to do this, but it appears that she tendered a lease in all other respects in compliance with the original contract between the parties.

In their answer to the pleadings of the plaintiff, the appellants allege that it was their understanding that they were to have the privilege of subletting, and that they regarded this as a part of the contract which Mrs. Harris was to carry out. In their answer, the appellants, among other things, say:

"The defendants aver that they have repeatedly offered to the plaintiff the one thousand dollars mentioned in their said proposal, if the plaintiff would give them a memorandum in writing sufficient to bind the plaintiff upon said contract, and the plaintiff refused to accede to the defendants' request, and for the purpose of harassing and annoying defendants, and injuring the commercial standing of the defendants, who are engaged in conducting a retail mercantile business, filed this suit against the defendants. On, to wit, the 1st day of November, 1913, the defendants tendered to the plaintiff in person the sum of one thousand dollars, and then and there requested her to sign the lease as stipulated for in said proposition of July 21, 1913, with the addition of a clause allowing defendants to sublet, and she refused to carry out her contract and sign said lease. Defendants then and there offered to pay and tendered plaintiff her one hundred dollars for the October rent, 1913, and she refused to accept the same. The plaintiff's said agent prepared a written lease in accordance with the proposition and the agreement of the parties, except it omitted the clause allowing the defendants to sublet, and a copy of same is hereto attached, and if the clause allowing defendants to sublet is included it expresses the agreement of the parties."

After some other averments, unnecessary to notice in this connection, the petition concludes with the following prayer:

"Wherefore the defendants pray that this honorable court first determine whether or not said contract is capable of specific performance in its entirety, and, if the court should decide

---

\*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

that said contract is capable of specific performance in its entirety, the defendants pray that they have judgment against the plaintiff for specific performance of said contract, and the defendants be allowed to pay said sum of $1,000 into court, and they here now tender said amount to the plaintiff in open court. In the event the court should determine that said contract is incapable of specific performance as to the interest of the minor, James Harris, in the property involved in the litigation, then they pray that they have specific performance so far as the one-third interest of the plaintiff, Mrs. Mae Harris, in the property, and that they have judgment against Mrs. Mae Harris for their damages on account of the plaintiff being unable to carry out said contract in its entirety, and, in the event it should be determined that said contract cannot be specifically performed in part, then the defendants pray that their rights and the rights of all parties be adjudicated, and that their former contract be held valid, and the defendants be allowed to retain the use of the two stores fronting on Wellington street, and of so much of the two rear stores as covers the ground which they used and enjoyed prior to the erection of the new stores, and that they have judgment against the plaintiff for their damages. The defendants further pray that the defendants be given such other relief in law and equity as they may show themselves to be justly entitled (to), and they here now offer to do equity, and to do and perform such acts as the court may require as a condition precedent to obtaining such relief."

The case was submitted to the court without a jury, and a judgment rendered in favor of Mrs. Harris for the amount sued for, and directing her to execute a lease to be delivered to the appellants in accordance with the terms expressed in the written proposal of July 21, 1913.

[1, 2] There are two grounds relied on for the reversal of that judgment. The first is that Mrs. Harris had no legal power to lease the property in controversy for more than one year, and for that reason she was unable to perform her part of the contract upon which the promise to pay the $1,000 was based. The raising of that question on appeal is somewhat inconsistent with the attitude of the appellants in the trial court. In their prayer for relief they asked that Mrs. Harris be compelled to perform the contract in its entirety. By "entirety" they probably meant one embracing a written permission for them to sublet the premises. The court did just what they asked for, except to require Mrs. Harris to incorporate that provision. The omission of that provision from the written lease would not, of course, in any manner affect the authority of Mrs. Harris to execute a valid lease for three years. But, aside from that objection to the consideration of those assignments at this time, we think Mrs. Harris did have the legal authority to execute a valid lease contract for the term of three years as originally contemplated by the parties. At common law the guardian might lease the ward's real estate for any term of years not extending beyond the ward's minority. 1 Washburn on Real Prop. 404; 21 Cyc. 85, and cases cited in notes. The following provisions of the statute in-dicate the powers which a guardian may exercise in such matters:

"Art. 4124. The guardian of the estate is entitled to the possession and management of all property belonging to the ward, to collect all debts, rents, or claims due such ward, to enforce all obligations in his favor, to bring and defend suits by or against him; but, in the management of the estate, the guardian shall be governed by the provisions of this title."

"Art. 4136. The guardian may rent the improved property of the ward, other than such property as is named in article 4134 without an order of the court authorizing him to do so, and either at public or private renting; but, when he rents without an order of court, he shall be required to account to the estate of the ward for the reasonable value of the rent of such property for the time the same was so rented.

"Art. 4137. The court may order the farm, plantation, manufactory, business, or any improved property of the estate to be rented, either at public or private renting, for any length of time, not exceeding one year, and upon such terms and conditions as the court may deem for the best interests of the ward."

"Art. 4139. Any person, upon complaint in writing filed with the clerk of the county court, may cause the guardian of the estate of a ward to be cited to appear at a regular term of the court and show cause why he should not be required to rent out the farm, plantation or other improved property of the ward, or why he should not be required to lease for improvement the wild or unimproved lands of the ward; and, upon the hearing of such complaint, the court shall make such order as may, in his judgment, be for the best interest of the estate."

The fact that the court may order the guardian to rent the improved property of the ward for any length of time not exceeding one year can hardly be construed as a limitation of the time for which the guardian may lease it when not acting under an order of the court. This provision doubtless means that, in case the guardian fails to perform his duty of leasing the ward's property and is compelled to do so by the court, the court may direct a renting for any term not exceeding one year, or, if the guardian desire to proceed under the order of the court in renting the ward's property, in order to protect himself from liability on his bond, he may apply to and receive authority from the court to rent the property for a length of time not exceeding one year. The fact that the guardian is made liable upon his bond, when the lease is not made under the direction of the court, is an indication that he was to have more latitude in dealing with the ward's property according to his own discretion.

[3] The second ground urged for reversing the judgment is the refusal of the court to require Mrs. Harris to execute a lease containing a provision permitting the appellants to sublet the premises. Assuming that this parol modification of the written contract might be ingrafted upon it and be specifically enforced, it nevertheless involved a contested issue of fact, and the state of the evidence is such that the court was justified in finding that no absolute agreement was made to grant such permission.

[4] As still another ground for reversing

the judgment, it is contended that the trial court failed to file his findings of fact and conclusions of law within the time prescribed by statute. We find incorporated in the record findings of fact and conclusions of law certified to by the trial judge. No objection is raised to their consideration in this court by the appellee. Even if the court did fail to legally comply with the request of the appellants in this particular, there is nothing in the record to indicate that such failure has operated to the detriment of the appellants in this appeal. There is a full statement of facts, and no issue is raised which cannot be satisfactorily disposed of without the conclusions requested. The error, if any, is harmless.

We find no just grounds for reversing the judgment, and it is accordingly affirmed.