## HOUSTON PACKING CO. v. DUNN.
### (No. 5405.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 3, 1915. On Motion for Rehearing, May 5, 1915.)

1. APPEAL AND ERROR ⟷736—ASSIGNMENTS OF ERROR—GROUPING—UNRELATED PROPOSITIONS.

Assignments of error, relating to different issues not susceptible of being presented by propositions relating to all, are improperly grouped together.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. ⟷736.]

2. APPEAL AND ERROR ⟷1039 — REVIEW — HARMLESS ERROR.

In an action for damages for breach of defendant's contract to buy cattle, the allegation of the complaint describing the quantity as two car loads, although defective as indefinite as to number, time, and general quality, was harmless, where the defendant alleged the contract as for the sale of two car loads of fat steers, which the plaintiff did not deny, and the evidence showed that 46 made two car loads; there being no contention that such number was more than are customarily shipped in two cars.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4075–4088; Dec. Dig. ⟷1039.]

3. EVIDENCE ⟷508—OPINION—EXPERT TESTIMONY.

In an action for breach of contract to buy cattle, opinion evidence of one who qualified in point of experience as to what such cattle

would have weighed at a certain place was admissible; the weight of the opinion being for the jury in connection with other testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2311; Dec. Dig. ⟷508.]

4. SALES ⟷384—REMEDIES OF SELLER—ACTION FOR DAMAGES—MEASURE.

In an action for breach of contract to purchase cattle, the seller's measure of damage was the difference between the contract price and the price at the point of delivery, or the nearest available market, if no market existed at such point.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. ⟷384.]

5. SALES ⟷379—REMEDIES OF SELLER—ACTION FOR DAMAGES.

In an action for breach of contract to buy cattle at so much a pound, plaintiff should have alleged what the cattle would have weighed at point of delivery, and what was their weight at the point to which the plaintiff, upon breach, was forced to send them to find a market; such allegations being necessary as a foundation for evidence of damage.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1094; Dec. Dig. ⟷379.]

6. APPEAL AND ERROR ⟷273—RESERVATION OF GROUNDS OF REVIEW — NECESSITY OF PLEADING—SPECIAL EXCEPTION.

Where no special exception was taken to a defective pleading, its correctness was not open to review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1590, 1606, 1620–1623, 1625–1630, 1764; Dec. Dig. ⟷273.]

7. DEPOSITIONS ⟷96 — PLEADING TO SUPPORT INTERROGATORY.

Where testimony by deposition of a witness was not material, under the allegations of the petition on file when the deposition was taken, but found support in the allegations of an amended petition thereafter filed, the rejection of the testimony was not called for, although in such case, upon showing by the adverse party that, on account of the question being irrelevant at the time of being propounded, he failed to file interrogatories, or that the new pleadings present matters upon which it is material that he should further examine the witness, he should be granted a continuance to do so.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 278, 279; Dec. Dig. ⟷96.]

8. APPEAL AND ERROR ⟷1050 — HARMLESS ERROR—ADMISSION OF EVIDENCE.

Error in admitting evidence was harmless, where it agreed with the only competent evidence given as to the matter.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⟷1050.]

9. SALES ⟷377—REMEDIES OF SELLER—ACTION FOR DAMAGES—PLEADINGS—DAMAGE.

In an action for breach of contract to buy cattle, which, upon defendant's refusal to accept, were shipped to another point and sold, where the petition alleged that the resale was made on the best available market and for the best price obtainable, it was unnecessary to allege that the cattle had no market value at point of delivery, since the allegation made necessarily implied the fact.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1092; Dec. Dig. ⟷377.]

10. SALES ⟷384 — BREACH OF CONTRACT — DUTY OF SELLER.

Where a buyer of live stock refused to accept the same on delivery, it was the duty of the

seller to realize the best price when he undertook to sell elsewhere.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. ☜384.]

11. SALES ☜384—REMEDIES OF SELLER—ACTION FOR DAMAGES—MEASURE.

In an action for breach of contract to buy cattle at so much a pound, where, upon refusal of the buyer to accept, the plaintiff shipped such cattle to the best available market, and there sold them, the verdict for the difference between the contract price and the amount received was not excessive, because there was not deducted therefrom the amount lost by shrinkage in weight caused by the delay of the carrier in shipping from point of delivery to point of resale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. ☜384.]

On Motion for Rehearing.

12. TRIAL ☜356—VERDICT—SPECIAL FINDINGS—FAILURE TO FIND ON ISSUE.

In an action for breach of a contract to buy live stock, where the court entered judgment upon a verdict without requiring an answer to the issue whether, at the time of the inspection and rejection of the steers by defendant's agent, the plaintiff led such agent to believe that he (the plaintiff) would retain such cattle for his own use, the action of the court was improper, since if one party to a contract makes statements to the other calculated to lead such other to believe that it is satisfactory to him that the contract be rescinded, and thereupon such other treats the contract as rescinded, he is estopped to assert that the contract has not been rescinded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 849–854; Dec. Dig. ☜356.]

13. PLEADING ☜186 — JOINDER OF ISSUE — REMEDIES OF SELLER—ACTION FOR DAMAGES.

In an action for breach of contract to buy cattle, where the petition set out that plaintiff had told defendant he would have to reship and sell elsewhere, while the answer pleaded an agreement by the plaintiff to retain such cattle, assenting to a rescission, the petition did not constitute a joinder of issue on the plea, under Rev. St. 1911, art. 1829, as amended by Acts 33d Leg. c. 127 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1829), enacted to secure joinder of issue on controvertible facts, and to eliminate those in controversy.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 399; Dec. Dig. ☜186.]

Appeal from Jim Wells County Court; W. R. Perkins, Judge.

Action by John F. Dunn against the Houston Packing Company. Judgment for plaintiff, and defendant appeals. Reversed, and cause remanded.

Hutcheson & Hutcheson, of Houston, and V. W. Taylor, of Alice, for appellant. B. D. Tarlton, Jr., and H. S. Bonham, both of Beeville, for appellee.

MOURSUND, J. Appellee sued appellant, alleging, in his first amended original petition filed on the date of trial, that on or about September 9, 1913, plaintiff entered into a contract with defendant, through its duly appointed agent, whereby plaintiff sold and agreed to deliver to the defendant at Mary, Jim Wells county, Tex., two car loads of plaintiff's cattle, to be shipped to Houston,

Tex., where they were to be weighed immediately upon arrival, defendant agreeing to pay 6¾ cents per pound on delivery in Houston, according to said weight in Houston; that, pursuant to said contract, plaintiff, on the day set for the delivery, gathered said cattle, drove them to Mary, Jim Wells county, and tendered them to defendant, and defendant refused to receive them, and refused to perform its part of the contract, though said cattle fulfilled all requirements of said contract, thereby breaching the same; that defendant inspected the cattle on the morning of September 11th, before they were driven to Mary, and at that time was informed that, should it refuse to receive the cattle, plaintiff would be forced to ship and resell them, which would probably result in serious loss to plaintiff; that, upon defendant's refusal to receive the cattle, plaintiff shipped them to Ft. Worth and sold them through National Live Stock Commission Company; that there was no market in Houston, and he sold the cattle on the best market available, and obtained the best price possible under the circumstances; that the shipment was seriously delayed, and was not weighed and sold in Ft. Worth until September 15th, and, as a result of the long run and delay, said cattle fell off more in weight than they would have if delivered under the contract; that they brought a less price than defendant agreed to pay for them, and plaintiff has been damaged in the sum of $540.

Defendant's amended original answer, filed before plaintiff's amended petition, consisted of a general demurrer, various special exceptions, and allegations to the effect that it was agreed that if the cattle, when inspected, were not fat enough to be used for the purpose desired by defendant, the defendant would have the right to reject them; that, when defendant's agent inspected them, he found same not fat, as represented by plaintiff, whereupon, under said agreement, said agent rejected them; that then plaintiff agreed he would keep the cattle for his own uses and purposes, and recognized the right of defendant's agent to reject said cattle, and is estopped to claim damages on account of such rejection of the cattle; that plaintiff did not insist or contend that the cattle were fat, and did not tender to defendant's agent any bill of sale to said cattle, as required by article 7170, Revised Statutes 1911, and article 1408 of the Penal Code.

By supplemental answer filed on the date of the trial, the exceptions and allegations contained in the first amended original answer were renewed as against the first amended petition, and defendant denied notice of intention to resell, as pleaded by plaintiff, alleged there was a market in Houston for cattle of the class owned by plaintiff, and, by allegations of not having knowledge

of sufficient facts to make answer to the other matters and things alleged by plaintiff, defendant joined issue thereon.

Plaintiff by supplemental petition denied that the cattle were sold subject to approval of defendant's agent, also denied that he agreed to keep them for his own use and purposes, and alleged that his failure to tender a bill of sale was immaterial.

Defendant filed a second supplemental answer denying that the cattle fulfilled the conditions of the agreement, and asserting that, if the cattle were not sold subject to defendant's approval and right of inspection, this was defendant's understanding of the agreement, and, if plaintiff did not agree to keep said cattle for his own use, that he led defendant's agent to believe that he was going to retain same for his own use, and is now estopped to deny that fact, because it will be profitable to him and injurious to this defendant.

All of defendant's exceptions were overruled. The case was submitted upon special issues, and, upon the answers thereto, the court rendered judgment in favor of plaintiff for $419.86. The jury found as follows: That plaintiff and defendant, acting through its agent, Bennett, entered into a verbal contract for the sale of two car loads of cattle to be weighed immediately upon their arrival at Houston; that they were not sold subject to Bennett's inspection; that they were of the grade and character represented by plaintiff to Bennett; that it was not agreed that Bennett had the right to reject the steers, if, upon inspection, they proved not to be fat; that plaintiff did not release Bennett from the contract; that there was no market price for fat steers at Mary, Jim Wells county, Tex., on or about September 10, 1913; that the average weight of the steers, had they been weighed in Houston after an ordinary run to said city, would have been 1040 pounds; that the net proceeds of the sale of the cattle at Ft. Worth was $2,713.66; that there was no general market for fat steers at Houston, Tex., on or about September 10, 1913; that plaintiff exercised the care that an ordinarily prudent man would have exercised in reselling the cattle. The jury was unable to agree upon the sixth question, reading as follows:

"At the time of the inspection of said steers by defendant's agent, did plaintiff lead defendant's agent to believe that he (the plaintiff) would retain said cattle for his own use?"

In addition to the facts found by the jury, we find in support of the judgment that the two car loads of steers consisted of 46 head, and the freight to Houston would not have exceeded 20 cents per hundredweight.

### Conclusions of Law.

[1, 2] 1. The first five assignments of error complain of the overruling of defendant's first three special exceptions, and are improperly grouped, because relating to different issues not susceptible of being presented by propositions applying to all. In fact, the fifth assignment in itself contains several distinct propositions. The propositions thereunder relate to the exception directed at the allegation describing plaintiff's cattle as two car loads, which description was contended to be vague, indefinite as to number, kind, and general quality. This exception should have been sustained; but as defendant alleged the contract was for the sale of two car loads of fat steers, which was not denied by plaintiff, and as the evidence discloses that 46 head of the steers made two car loads, and no contention was made that such number was in excess of the number of steers of that age customarily shipped in two cars, we think the error was not one which requires a reversal of the judgment.

[3] 2. The sixth assignment is overruled. The witness had sufficiently qualified as to experience in shipping cattle to testify to his opinion as to what the cattle would have weighed at Houston. The correctness of his opinion was a matter to be weighed by the jury in connection with the other testimony.

[4-6] 3. The seventh, eighth, and ninth assignments are improperly grouped. The seventh and eighth again complain of the overruling of special exceptions 2 and 3, and each of said assignments contains several propositions. The eighth complains of the overruling of defendant's fifth special exception, which was to the effect that the allegations were insufficient to show damage because the market value at Mary or at Houston was not stated, and the damages could only be measured by the difference in the contract price and the market value at one of said places. The only proposition submitted is to the effect that plaintiff should have alleged what the cattle would have weighed in Houston and what their weight in Ft. Worth was. This proposition is correct, but no special exception to that effect was presented. The assignments are overruled.

4. The tenth and eleventh assignments question the right of the court to receive the verdict and enter judgment, without requiring an answer to the sixth issue, hereinbefore copied. The action of the court in receiving the verdict, without requiring an answer to said issue, was equivalent to the withdrawal of the issue from the jury. In this we conclude there was no error, for the reason that there was no evidence raising the issue. There is not a particle of testimony to the effect that plaintiff led Bennett to believe he was going to retain the cattle for his own use; on the contrary, both parties agree that plaintiff told Bennett he was going to ship them to Ft. Worth while he had them together and sell them on the market there, if Bennett did not take them. We cannot add to the pleading or change the wording of an issue, and thus give defendant a chance to

replead and ask that the issue be submitted which was raised by the testimony, but must pass upon the record as we find it. The court has a right to withdraw an issue which should not have been submitted. The assignments are overruled.

The twelfth, thirteenth, and thirtieth assignments relate to a question of pleading. The defendant's allegation to the effect that plaintiff led him to believe that he was going to keep the cattle for his own use was not denied by plaintiff in any pleading thereafter filed. Plaintiff had alleged that he told defendant that, if it refused to receive the cattle, he would be forced to ship and resell them, which would probably result in serious loss to plaintiff. He also pleaded that he denied that he agreed to keep the cattle, and denied that he recognized defendant's right to reject them. Plaintiff failed to specifically deny the allegation that he led defendant to believe that he was going to retain the cattle for his own use. If plaintiff established the truth of his allegation, to the effect that he told defendant he would be forced to ship and resell the cattle, then the falsity of defendant's allegation that he led defendant to believe he would retain them for his own use would necessarily follow. Defendant did not allege the facts relied upon to show that he was led by plaintiff to believe he would keep the cattle, and plaintiff, having alleged that he gave information to defendant inconsistent with and contradictory of the conclusion so pleaded, cannot be said to have admitted it. The purpose of the amendment to article 1829, made by the last Legislature, was to secure a joinder of issue upon the controvertible facts and to eliminate those not in controversy, and it was not intended that parties should keep on pleading after issue has substantially been joined by allegations which state the contrary of each other. Railway v. Pennington, 166 S. W. 464; Word v. Bank of Menard, 170 S. W. 845; Memphis Cotton Oil Co. v. Tolbert, 171 S. W. 309; St. Louis, B. & M. Ry. Co. v. Evans, 173 S. W. 228, decided by this court but not yet officially reported. The assignments are overruled.

The fourteenth assignment presents no error. The issue which was refused was a part of the issue whether a rescission had taken place by reason of language used by plaintiff which was reasonably calculated to and did cause defendant to believe that it was satisfactory to plaintiff to keep the cattle. We do not see how appellant could have been injured by submitting special issue No. 5. Appellant raised this issue by pleading an agreement on the part of appellee to keep the cattle, and, if it objected to the defense being submitted, the court should not have submitted it, but such submission could not have injured appellant.

Assignments Nos. 16, 17, 18, 19, 25, 26, 27, and 29 are overruled.

[7] Assignments 20, 21, 22, 23, and 24 complain of the admission of answers of the witness Crowley, in regard to matters pleaded in the plaintiff's first amended petition, but not pleaded in the petition on file at the time the depositions were taken. This is a novel question, but, after considering the matter carefully, we conclude that the fact of want of pleading to support an interrogatory at the time it is propounded will not require the rejection of the evidence, if material under an amended pleading. If the other party can show that, owing to the questions being irrelevant at the time they were propounded, he failed to file cross-interrogatories, or that the new pleadings present matters upon which it is material that he should further examine the witness, he should be granted a continuance so as to have an opportunity to do so. In this case no such issue was presented, the witness was cross-examined at length, and the court did not err in admitting the testimony.

[8] The twenty-eighth assignment is sustained, but, as the inadmissible testimony agrees with the only competent testimony given in regard to the matter, the error in admitting it was an immaterial one.

[9, 10] The thirty-first assignment is without merit. It was alleged that the cattle were resold on the best available market, and that appellee obtained the best price possible under the circumstances. It was unnecessary to allege that the cattle had no market value at Mary, because it was alleged that the resale was made on the best available market and for the best price obtainable, which constituted a full compliance by the seller with his duty to the buyer to realize the best price in case he undertakes to resell. Simpkins on Contracts and Sales (3d Ed.) p. 951; Waples v. Overaker & Co., 77 Tex. 12, 13 S. W. 527, 19 Am. St. Rep. 727.

[11] The thirty-second assignment complains of the judgment as excessive. The court did not err in assessing plaintiff's damages at the difference between what the cattle would have brought under the contract and what was realized from the resale. The 46 head at 1040 pounds average were figured at 6¾ cents per pound and 20 cents per hundredweight deducted for freight. From the net result was deducted the amount of the net proceeds of the sale at Ft. Worth. Plaintiff could not be deprived of any part of his damages on account of neglect or delay of the railroad company; he having done his duty toward obtaining for defendant the best price for the cattle. Simpkins on Contracts and Sales, p. 952.

The judgment is affirmed.

## On Motion for Rehearing.

[12] In considering the tenth and eleventh assignments of error we gave special issue No. 6 a construction not given it by either party to the suit, and overruled the as-

signments upon a theory not urged by appellee. We gave the issue its liberal construction, but the parties themselves construed it as an inquiry whether plaintiff led Bennett to believe he was willing to retain the cattle—in other words, willing to rescind the trade. As it was admitted that plaintiff told Bennett he was going to ship the cattle to Ft. Worth while he had them together and sell them on the market, it is apparent that the expression "retain the cattle for his own use" was used for the purpose of expressing the idea that Dunn was to retain the cattle and permit Bennett to rescind the contract. No objection was made by plaintiff to the submission of said issue No. 6, and both parties treated it as being properly submitted under the pleadings and evidence. The pleading raising the issue, although a conclusion, was not excepted to, and, in the absence of exception, we think must be treated as raising the issue. The evidence was so conflicting upon the issue, as it was construed by the parties, that the jury failed to agree. There can be no doubt under the law that if one party to a contract makes statements to the other which are reasonably calculated to lead the other to believe, and do lead him to believe, that it is satisfactory for the contract to be rescinded, and thereupon such other treats the contract as rescinded, the party making such statements is estopped from contending that the contract has not been rescinded. Appellee, in his brief, says that the issue, "Did Dunn lead Bennett to believe that he was released?" was superfluous, because it was included in the issue whether Dunn released Bennett from the obligations of the contract, and that, in answering that he was not released, the jury found he was not released either by agreement or estoppel. This contention is without merit, in view of the fact that two separate issues were submitted with the acquiescence of both parties, one of which covered the question of release by agreement and the other that of release by estoppel. We are stating the construction placed thereon by the parties. Appellee may be correct in his view that a general issue could have been submitted involving the sole question whether Bennett was in fact released, and appropriate instructions given as to the facts necessary to be found in order to show a release by agreement or by estoppel; but in this case separate questions were asked, and no instructions were required. One of these questions was never answered, and it is useless to show that it could have been dispensed with, had certain instructions been given the jury, so as to let them know that the issue thereby made was included in another question. We conclude that it would be unjust to give the issue a construction not given it by the parties and the jury, and that the said assignments 10 and 11 should be sustained.

[13] In disposing of assignments Nos. 12, 13, and 30, we again gave the pleading upon which special issue No. 6 was based its most literal construction, and therefore concluded that the allegation that Dunn told Bennett that he would be forced to ship and resell the cattle made an issue, so that it became unnecessary to deny the pleading upon which said special issue No. 6 was based. Upon further consideration, we conclude that issue was not joined on this plea, as is required by statute.

We overruled the assignment relating to the ·overruling of defendant's application for continuance without discussing the same; and, while appellant makes a very strong argument in support of the assignment, we conclude that our former ruling was correct. At any rate, as the judgment will be reversed upon other grounds, the question becomes an immaterial one.

The judgment is reversed, and the cause remanded.